Our third case this morning. 17-2430 Construction Systems, Inc. v. Fagelhaber, LLC. All right, and will Council on Construction Systems please approach? Good morning, Your Honor. My name is George Spellmayer for Construction Systems. All right. Good morning, Your Honors. My name is Michael Beret. I represent the defendant in Appellee, Fagelhaber, LLC. All right, and Mr. Spellmayer, how much time would you like? I think about 10 minutes would do it. Okay. And Mr. Beret, how much time would you like? 10 minutes. 10 minutes? All right. Okay, Mr. Spellmayer, anytime you're ready. If it pleases the Court. In this case, there are several terms that are critical when we're doing the case law about the statute of limitations. Plainly obvious. Speculative damages. Obvious professional errors. There are also some dates that are critical here. First is the date of August 20, 2007. That is the date upon which the cross motions for summary judgment were both denied. The mechanics lien judge determining that there were issues of fact that needed a resolution through a trial. The next critical date is December 21. Let's talk about other critical dates that might come before those. Yes, sir. In your complaint, you ask for reasonable attorney fees and costs incurred as a result of the compromise of the lien rights. What are you referring to? Your Honor, that complaint was drafted by other counsel. I know that's not significant. And I believe that they were referring to Ms. Karen Berre's fees. Okay. And I tend to agree with you. I believe that's what they're referring to. So let's assume that they are. Well, a few years before the dates that you're talking about, she was, she seemed like a very good attorney. I mean, she really tried to do what she could in this case. And she sent a bill indicating that Fagel and Haber might have screwed up, and she's trying to save that. And that bill was paid. So why, since that was part of the damages that were requested, weren't Fagel and Haber on notice at that time? Your Honor, I think you get an important point in this case. Karen Berre's was involved in mitigating damages, trying to resurrect the case, trying to protect it from the defect that she saw. You know, Judge, in thinking about my argument today, how many times do lawyers make mistakes in the course of the handling of a case, but yet find a way to solve that problem or to cure that error? But if Karen Berre's has to bill and construction systems has to pay attorney's fees trying to fix Fagel-Haber's mistake, even if she's successful, they're still out that money, right? I think that is a question that has to be answered. I'm not aware of an answer to that in the case law. What I am aware of is that had she been successful in resurrecting that notice, that I believe whether those fees were caused by a negligence of a prior attorney would not cure the fact that the damages at that time remained speculative because she fixed it. Well, you know, there's lots of cases out there that say the extent of damages need not be known in order to trigger the statute of limitations running. As long as the plaintiff has sustained damages, statute of limitations starts to run. So if construction systems had to pay Karen Berre's to try and fix the defect in the notice to preserve the lien by some other method, it seems to me that's when the statute of limitations started to run. Your Honor, with respect to fees paid in mitigation, consideration has to be given by the court to the effect of those services in mitigating the consequences of the professional negligence. Also, when we get into this whole concept that I've read in the cases about these prophylactic suits or provisional lawsuits, those lawsuits inevitably would carry with them admissions of defects in the still-progressing underlying case. And I suggest to the court that in this case, until the motions for assembly judgment were denied or until the settlement, that all of the damages remain speculative. That is, we could not say that construction systems was damaged in fact by the error with the notice. It cannot be said and it couldn't be said until it was realized with the settlement and the denial of the motions. That kind of an error, that kind of a mistake is certainly not plainly obvious. Because even when it got to the mechanics lien judge, the mechanics lien judge said there's a factor to be decided. Yeah, but that was on Karen Barris's alternative theories, whether construction systems was a general contractor, not a subcontractor, whether the bank knew of construction systems work and should be held liable for it. But on the issue of the priority of the mechanics lien over the banks' lien, there was never any issue because the bank never had notice, right? Your Honor, I believe that the approach Ms. Barris took was that either notice wasn't necessary for the banks because of other communications that had been made, or notice wasn't required at all because it was a contract, an original contract. But I think we have, the Court is hitting upon some important issues. Because if we are going to start the statute running during the period of time when a lawyer is trying to compensate for some defect, then we will indeed inhibit the mitigation process. We will indeed see lawsuits filed when they may not be necessary. But that's what tolling agreements are for. Lawyers enter into tolling agreements all the time. They say to their former lawyer, you know, I think you made a mistake here, and I'm going to have to hire another lawyer to fix it. I really don't want to file a lawsuit while I'm trying to fix it. And it's not in your interest either because if I'm able to fix it, your damages are lower. So let's agree that while we're trying to straighten this out, the statute of limitations won't run. I mean, that happens all the time. Your Honor, tolling agreements are utilized. We don't know whether Fagel Haber would have agreed to do a tolling agreement or not. Just like we don't know, had a lawsuit been filed, if one of the courts would allow for a stay. We don't know those things. I'm unaware of anything in the record to indicate that Fagel Haber would. It's not just a simple matter of getting Fagel Haber to do it. You also got to get a carrier, their insurance company, to do it as well. And that is, well, it's not part of the record. That's not always the easiest thing to do. So I think that in suggesting a tolling agreement is what he has, that we are moving into an area that we don't have to move into. Well, how do we differentiate? There are many facets of the damages. Probably the tail might be the attorney fees, which let's assume for argument that they were aware they were paying attorney fees. They mean otherwise your client was paying attorney fees they otherwise may not have had to pay. And what you say, well, if they had filed suit at that time, first there's case law that says don't do that because it causes more cases to be filed. It may be unnecessary. It's a prophylactic type situation. So then what is the rule or is there a rule or a case that you could point to that would indicate to a party that's in this situation, when the statute would begin to run? I mean, what you're saying, we don't know. I mean, that's why you're before us. There's a dispute. But there needs to be some kind of rule, it seems to me, that would make it clear because here we don't know if there would be a tolling or not. But we also know that they were unnoticed. Well, Judge, Your Honor, I'm unaware of the case that meets the issue the court just raised. I am aware of a problem, and that is that lawyers make mistakes. For example, I'll just give you an example I was discussing earlier. I failed to disclose an expert witness under a court order. So I go on and I research, what are the factors that a court should consider in giving me a break here and letting me disclose late? So now I'm billing on that issue. Does that trigger damages? Obviously, I should have disclosed an expert on time, but I go into court and the judge gives me a break and I get to disclose. A lot of lawyers would probably refrain from charging their client. I agree with the court on that. I agree, but that is not really the situation we have here because Ms. Berries wasn't the person who made a mistake with the notice. But she was the lawyer who was charged with the obligation of doing the best she very well could for her client. And I think the mitigation activity until the outcome is resolved, as it was here by a settlement, those as damages should be considered by the court as speculative until the outcome is resolved. So the general rule that Justice Hyman was asking about would be until the underlying case is resolved, whenever it is, and it could be years down the line, you don't have to file suit. I agree with that. I think that's the situation we have here. Does any case hold that in the legal malpractice context? Well, there are cases that use the phrase adverse result, settlement, or dismissal. There are cases, I don't have them at the podium here with me, but they are cited in our materials. And why would you, why should that be, I mean, to me that's, I mean, it's more definite when we know somebody receives a bill and they're aware of a bad situation with a lawyer. Is it, does it make sense, why would it make sense to wait, even though the case law says it, we still need to, since it's an issue of first impression apparently, why should we wait for an adverse result, a settlement, or a dismissal? Your Honor, may I make, I will answer that question when I lay it to you. Having had occasion to work with mechanics lien cases, there is nothing plainly obvious about mechanics lien law. And so I think that in the context of this case, that the dismissal, the adverse result, or the settlement should be the rule and not the exception of plainly obvious, which you articulated in the Nelson v. Padgett case. If the, I'm here to answer any questions the clerk has, but if there are no additional questions, I thank you for your time. All right, thank you, Mr. Spellmeyer. Mr. Berre. May it please the court, counsel? I'd like to start off by addressing the last comment Mr. Spellmeyer made, that based upon his experience, there's nothing plainly obvious, or painfully obvious about mechanics lien law. I address that because when you look at the letter that Ms. Berre sent to my client, a fatal paper on February 10, 2015, it was painfully obvious to her at that point in time that this lien was defective. She made a statement in the letter that there's a problematic situation. She made it clear CSI did not send notice to Cosmopolitan Bank. Let's assume we agree with you. Okay. That is a date. They're suggesting a different date, a later date. And what they're saying is if they had filed on your date, they would have undermined the ongoing litigation, which is why some cases say adverse results, settlement, or dismissal, because why should they be put in a position where they could be saying X and minus X, and they don't match? And I understand the argument. Here's why this case is different. This case is different because in the amended counterclaim that Ms. Berre prepared, in the second amended counterclaim that Ms. Berre prepared, she alleged that the 90-day notice did not need to be given. That was one of her arguments. Exactly. And so filing a malpractice lawsuit on the basis that the 90-day notice was not given would not be in consistent positions. In fact, it can easily be reconciled. By going forward, as Mr. Spellmeyer alludes to, and trying to mitigate the damages in the mechanics lien litigation, there's nothing contradictory in that position to also filing a lawsuit when there was the existence of damages here and claiming that Faglehaber committed professional negligence in failing to provide the 90-day notice. The two positions are clearly reconcilable. So let's say she was totally successful, and you're saying they still would have a claim? Yes, I would, Your Honor. Because of the attorney fees. So the lesson here would be watch your attorney fees for clients with regard to malpractice claims against lawyers. Because once you get a bill that indicates that your prior lawyer may have done something wrong, the client is supposed to be on notice, the former client. I would agree with that proposition. I would also agree, and I would also point out, that the knowledge of Ms. Barris here is imputed to the client. It's not so much the client's responsibility to closely monitor those bills and understand and appreciate what the attorney is doing, but it's the attorney's responsibility as well to communicate to the client the import of what they're doing in terms of those activities and what it means in terms of what the prior counsel did. And that's what didn't happen here. What about the argument that this is just going to cause a lot of cases to be filed early that will then have to be put on hold? Again, I don't think that taking the complete opposite. And that's what would have happened here. I mean, it's several years later that something happened. I understand that, Your Honor. I would cite to the Nelson opinion on how that was addressed there, that our legislature decided to write a statute of limitations in the Code of Civil Procedure for a reason, and that reason fits directly with this case. Here we have an attorney who had knowledge of wrongdoing. We have Ms. Barris who testified her deposition that this lien defect was fatal, and she billed her client in order to address what she deemed to be a fatal lien defect. So I see the position. I understand the argument. But here, however, and according to the Nelson opinion, this comports with why the legislature wrote the statute of limitations. How would you address the cases, though, that have said adverse results that are under dismissal? I would address, first off, the plaintiff in the case cited the York Woods case. The York Woods case is quite different than what we have here. In York Woods, it took an appellate court opinion to place the client on knowledge of wrongdoing. That was a different issue with regard to it. Correct. That was too late. Correct. Correct. The plaintiff also cites the Warnick decision. There, this court stated, and I'm paraphrasing, that until the letter agreements that address the earnest money were declared to be unenforceable, the client knew that they were in a bona fide dispute, and they could have believed that the opponent's litigation or the opponent's complaint was merely frivolous. And so in that case, until the court issued a summary judgment order finding the agreements to be unenforceable, there was no knowledge that could be imputed to the client that there was anything done that was wrong. Here we have a different situation, and I would emphasize that the case law under Section 24 of the Mechanics-Lean Act discusses the fact that these requirements are absolute. And as Your Honor pointed out, Ms. Barris was a very experienced lawyer. She was a construction lawyer. She knew this act. She knew that there was a defect in this lien as early as February 10, 2005, and she acted upon it. If the court has no other questions on statute of limitations, I would like to turn to the alternative grounds for affirming the trial court's judgment. During the course of expert discovery in the case, we brought to Ms. Barris the order that was entered on September 1, 2006. The First Bank of Oak Park issued a motion for judgment of foreclosure in order, and in the draft order it set forth that construction systems had priority over the interest of the bank. That order was eventually entered on September 1, 2006. I mean, the bank never officially – I know this was an agreed order that was entered. The bank never officially said, yeah, you have priority over us. We don't know what the motivations were of the bank. There was no discovery taken of any representatives of the bank. But if the bank had conceded the priority of construction systems lien, it would have been paid the 3.1 it was owed, not the 1.8. Not necessarily, Your Honor, and here's why. There were a number of other lien claimants who were listed on the list that was attached to that order. Only three of those lien claimants received 100 cents on the dollar. We obtained those settlement agreements during the course of the case. The First Bank of Oak Park was holding over the head of those lien claimants the potential for appeal on various issues, and so that's why a number of the lien claimants, the vast majority of the lien claimants, in fact, did not get 100 cents on the dollar. During the deposition of the plaintiff's expert, Mr. Mirovin, I held a discussion with him on the importance of the September 1, 2006 order, and he agreed that there's nothing in the record to reflect. Is this in the record? It is, Your Honor. Give me a moment. No, if you say it is, I'll accept your word. Thank you. Mr. Mirovin agreed that there was nothing in the court record to reflect that the September 1, 2006 order was ever modified. In fact, he went on to explain why the order was entered. The order was entered because the bank had to get money out of escrow, and it was Mr. Mirovin's interpretation of that order that unless the court made a finding that all of the lien claimants were found to have priority over the bank, the bank was not going to be able to get money out of the escrow. Now, I don't know if that is Mr. Mirovin's speculation or whether there truly is a factual basis for what Mr. Mirovin is saying based upon his experience, but it certainly makes sense that in order for the bank to get their money, they had to free up the property, and that explains why the judgment order was entered. That explains why the bank filed the motion in the first place. I would submit to the court that the existence of that September 1, 2006 order breaks any proximal cause nexus, any failure to serve the bank, and I would also submit to the court that that order should serve to collaterally stop Plankton in this case from litigating a failure to provide the bank with notice of the fee. Finally, I just want to touch upon the settlement-based theory that has been advanced, that set forth also in our response briefing, was the subject of our motion for summary judgment at the trial court level. Judge Griffin made a determination that the trial court got to rule on that, nor did he rule on the September 1, 2006 order. But suffice it to say that from the theory that's been advanced here, the theory is that if the lien had been perfected and if the bank had been given notice of the 90-day or had been given the 90-day notice, construction systems would have obtained more in a settlement. The flaw in that theory is that there's no testimony from anyone at the bank that they would have paid construction systems any more than $1.825 million if they had notice of the lien earlier. And without some factual basis upon which to opine that more money would have been earned here in a settlement, I don't believe that the plaintiff can prove their case on causation. Thank you, and I ask for the trial court's judgment to be affirmed. All right. Thank you, Mr. Berre. Mr. Spellmeyer. With respect to the last point, Your Honors, on proximate cause, proximate cause in this kind of a case is fulfilled by trying the mechanics lien case and by proving the amount of the mechanics lien which would have been perfected had the notice been appropriately given. That's how you do proximate cause. It's the case within the case. And we're prepared to try that case. With respect to the order that construction systems was a senior lien holder, whatever that term means under the mechanics laws, everyone in the case understood that that was a mistake. It was treated as a mistake. In fact, as the case went forward, at the time of the summary judgment, the summary judgments were denied to establish that lien, and the matter was referred for trial. And before the trial could take place, the case was settled. So that order should not give any succor to the defendant in this case because it was understood and explained by Ms. Beres that it would have been in bad faith that she brought that forward in an effort to utilize it. This case is unique, I think, in the fact, by reason of the facts concerning the mitigation that took place. Why shouldn't we not follow Nelson versus Paget? All right. Your Honor, as I have earlier mentioned, I don't think there's anything plainly obvious in connection with the prosecution of cases within the Mechanics Lien Act. Cases are saved. Cases are not saved. I don't think that the rule should be that damages occur simply by reason of an attorney's billing, that rather, whether there are damages in a situation like this, should be considered as speculative until an adverse result occurs, dismissal, or settlement. But the issue here isn't damages. The issue here is when construction systems knew or should have known there was a problem. I understand that, Your Honor. You are correct. That is the issue here. And in a complex case like this, it was complex. Well, Ms. Beres had it right. She knew right away that there was an unperfected lien, that somebody failed to notify. She knew that in March of 2005. But that did not teach her that she would be unable to recover the full amount of the mechanics lien. It didn't teach her that. That goes to mitigation of damages, not the fact of damages. Well, Your Honor, I would suggest that had she succeeded in getting the full amount of damages, that a court could reasonably consider all the attorney's fees as having been speculative. But this is not a damages case. This is a malpractice case, and we're stuck with the two-year statute of limitations. I understand that, Your Honor. So we have to figure out when did the statute start to run? Was it ever told? If so, what told it? And if it was told, when did it restart? We're looking at a clear indication from Ms. Beres in March of 2005. Oh, Bagel, you didn't notify COSMO. There's a problem. Let's see if we can resolve it. It's still an acknowledgment that there's a problem in March of 2005. They had two years to file a malpractice action. They didn't file it until 2009. What do you think told it, that the damages were still uncertain? No, that there was uncertainty as to whether any damages existed, because she might be able to win the whole case and recover 100 percent of the mechanics lien amount. So that whether there were damages, whatever damages there were, were speculative at that point in time until the settlement. So, again, your bright line rule would be, even though the successor attorney knows that there was malpractice, there was a mistake by former counsel, as long as the attorney is trying to fix it, the statute isn't running. Well, I certainly would buy on to that rule, but I would like to caveat that. I'm unaware back then of anybody who knew or reasonably suspected that Fagel-Haber, a fine law firm, was guilty of professional negligence. What they knew was that they had. Harris testified that the failure to give notice was fatal to the mechanics lien. And it may be, but that doesn't mean it was professional negligence not to do it. There could be many reasons why that notice wasn't given, and there could be many reasons why that notice wasn't given other than professional negligence, and I've seen expert witnesses, lawyers explain that kind of situation to me many times. Thank you. Thank you very much, Mr. Spellmeyer. Mr. Berre, thank you for your arguments and your briefs. We will take the case under advisement.